Good morning everybody. Albert Stoll for the Appellant. I'd like to start off and focus this argument down to Excerpt 395. That is the statement in the application where these alleged misrepresentations emanate from. And I first would like to say a little context is in order. As your honors know, the applicant was illiterate in English, couldn't speak English nor read it. That was undisputed at the trial court level. So she is solicited by MetLife and meets with an agent who is also of Fijian background and speaks Hindi as Ms. Ramdalari does. So 395, where the alleged misrepresentations emanate from, starts off additional information. Purpose of insurance, to pay off mortgage of approximately $250,000 on the property owned by the proposed insured that the primary beneficiary will inherit in the event of death of primary insured. So we know it's undisputed that the applicant couldn't read this. It's in English. So the only way we can get at what she believed was on there is to go to our translation that we provided to Judge Hamilton at the trial court level. That's Excerpt 101, the Rupinder-Kerr translation. So to get at the question that was asked to allegedly result in this response, first of all, as Judge Hamilton pointed out, there is no question that anybody can point to that asks the applicant for this information. She states in her order, plaintiff correctly points out that neither of the two policy applications calls for an express statement by the decedent in which she avows that she is the owner of any properties. So Judge Hamilton agrees by that. Also, the agent, Mr. Vellu, I cannot say what question I asked to the insured to get this answer. So it's just a basic in a stance. Can you step back a minute and explain to me, this is a life insurance policy. Yes. When you refinance a house or you buy a house, you'll often be offered what they call mortgage insurance. Sure. But this does not on its face state itself as a mortgage insurance policy. The purpose of the policy, which you have read, whether she understood it or not, can you explain what the understanding was about getting the policy in the first place? I mean, it's a life insurance policy. Well, it's not clear from the application. So the relevance here, this is an affirmative defense of misrepresentation. And what she understood it to be, we know from the translation that was undisputed at the trial court level in 101. And the way that statement was translated by the agent, undisputed at the trial court level, what purpose is the insurance? To pay the money, $250,000 insurance, to pay off the house. If something happens to, excuse me, if something happens, the money you will get is to pay off the loan. So that's what, in her language, she understood to be written there. Mr. Stahl, in the district court, did you ever characterize your client's interest as an equitable interest in the property? Or do you use that language at all, call it a beneficial interest in the property? We raised that. I believe we raised that at the trial court level. We had a discussion on the record that there was, there are different types of ownerships potentially. I pointed out that the applicant, there's no question about are you a record owner, are you an owner of title. And I pointed out that ownership can be inherently vague. So that came up. Do you have any authority at all for the proposition that a cultural practice can amount to a beneficial or equitable interest in property as a matter of State  law? Do I have, as a matter of State law? No, I do not have that. And I'll tell you why that question, although interesting, doesn't apply here. And that is because looking at the translation, Ram DeLaury, the applicant, had no way of knowing Mr. Vellu put down the word owner on the application, because we know from the undisputed translation that owner was not a part of that translation. To pay the money, 250,000 insurance to pay on the house, doesn't say she owns the house. If something happens, the money you will get is to pay off the loan. It doesn't say it's her loan or whose loan or it doesn't say what house. So that's a good question, but we don't get to it because she had no way of knowing that she was being represented as being the owner based on the Rupinder Kerr translation at Excerpt 101. If I may, Mr. Stahl, one final question. I think it's obvious from your remarks, but you do not dispute that the question of ownership of the property was a material fact. That is a very good question. And we look at our opening opposition to the summary judgment. We do raise that. And it's such a big issue that the answer is yes. It's such a fundamental issue that we do dispute it. And we dispute it because if a life insurance company that is selling life insurance to a whole bunch of people doesn't even ask the question, that is certainly creates a tribal issue of material fact on whether or not they think it's important. Certainly when they're using it. Well, there's such an animal, I think, as mortgage-term life insurance, right? Yes. Yes. All right. So it doesn't necessarily follow that you're going to have a discrete application for it. I mean, most life insurance, you just need to make a representation about the state of your health, I would suppose. But here, she definitely wanted to make sure that the mortgage was covered and overstated the value of it, for that matter. So I'm not sure it even matters whether she said she was an owner or not. Does it? Well, I don't – first, I don't believe she overstated the value of the mortgage because if you look at the translation, it just says to pay off the loan. It doesn't say the balance of the loan. To her knowledge, the way it was translated, she didn't say here's the balance of the loan or here's the balance. Well, you're not going to have it. Okay. Go ahead. Excuse me. Go ahead. Or what house it applies to. It says the two – the way he translated it to her, the English version, which you're looking at and saying, hey, it says $250,000 on the property owned. Purpose of the insurance, to pay off mortgage of approximately $250,000. But when it's not covered – Well, you're not suggesting that he made the $250,000 up out of the clear blue sky. Well, it says to pay the money, $250,000 insurance to pay off the loan. That's what he told her. That's what she knew.  She, as you saw in the history, came to this country. Her daughter-in-law invested her money in real estate. She had multiple properties. Excuse me, guys. No, just stay in front of the mic. So in terms of her knowledge, what she knew, she didn't know that that was the issue. The purpose of the insurance to her was to pay the money that she was going to get – her estate would get if she died. $250,000 insurance to pay on the house. If something happens, the money you will get is to pay off the loan. To clarify, can I just clarify what you've been saying? So we round it back to what Judge Ripple asked you. Do you agree that from MetLife's standpoint, it was material to them whether or not the purpose of the insurance was to pay off a mortgage as opposed to simply providing life insurance where they would be rating it based on the predictability of the life of the insured? No, I don't agree with that because they have – anytime they're going to rescind, they're going to label it material. They have to or it's not a good rescission. So that is a phony label that they're putting on it. And we know that's phony because they didn't ask the question number two – or number one. And number two, they never went back to the agent and said, hey, this is for the mortgages, Mr. Vellu. Obviously, you talked to her about the property, and did she say she owned it and that here's the value of the mortgages? They never even asked him that. So that tells you they're labeling it material. It's phony. Mr. Stoll, was this – this was during the period of incontestability, right? Yes. Of contestability. Excuse me. So did NetLife, in your view, have any obligation prior to the event triggering their coverage happening to make any inquiries? Yes. I believe that they did. I don't believe that in your analysis you need to get there because the issue of ownership never came up or what property this applied to or the balances of the loans never came up in the translation. What you're getting to, I think, goes to some of the case law that talks about if there's an inconsistency on the face of applications where somebody says they don't have – haven't had a heart attack, but a company gets records that indicate there was a heart attack in the past, but they go ahead and issue the policy, there is a duty to clarify those inconsistencies. In this case, there is no inconsistency because when we look at the translation, all she's saying is we're going to pay off the loan. It doesn't say whose loan or on what house. So they didn't have any duty of inquiry prior to the – her death. Based on the translation. It was still during the contestability period, right? Based on the translation, there was no misstatement of any fact. So there would be nothing that would – that – there's just simply no misrepresentation to go investigate. But I – hopefully I understood your question. Okay. You're over time.  Thank you.  Good morning, Your Honors. May it please the Court, and thank you, by the way, for the early start. I really appreciate it. You want to – I know you, but we know you, but you need to state it on the record who you are and who you represent. Certainly, Your Honor. Royal Oaks for Appellee's Metropolitan Life Insurance Company. Thank you. Your Honors, I think this is a straightforward case of a material misrepresentation justifying the decision to rescind, but interesting questions have already been raised, and let me try to address some of the themes. The issue of what happened between Mr. Valloux, the agent, and Mrs. Seawack is inherently difficult in the sense that she's dead and he doesn't have crystal clear memory of what went on. And that's why it was very helpful that discovery shed some light on this. And contrary to the impression that the appellant's brief gives, a couple of things are clear from discovery. Number one, Mrs. Seawack claimed to own these properties. Can I just ask you from an insurance standpoint, what difference does it make? You're insuring the life of someone. What difference does it make? Can you just explain to us? Certainly. What is the point of life insurance? What has the property value got to do with it? Whatever they use the proceeds for, you're still, your risk factors and rating are based, I assume, on the life expectancy of the insured. Certainly. Thank you. The answer, Your Honor, is that it makes a huge difference, as established in the record by the underwriter who submitted a declaration explaining the thought process of the company. And in brief, the thought process is you don't just walk into an insurance company and say, regardless of what I own or my financial situation, I'd like a million dollars or I'd like $650,000 in life insurance. That's not the way insurance operates as established in the record. You have to have an income that's to be replaced or mortgages that have to be paid off. Yes, Your Honor. The declaration says that, but the next question, I guess, is why? Why are you concerned about that? Certainly. And that's just a historical reality in the insurance industry. To prevent fraud, to prevent possible motivation for murder, to prevent people from making misrepresentations. You don't go in and say, I'd like $10 million on my life, and you don't have any assets, whether you're 10 years old or 95 years old. That's not how an insurance company evaluates risks. They need to replace the estate. If that is the reason, why is it not part of the preprinted form? If it is such a critical aspect, fundamental to life insurance, why does this show up in a heading called additional information? Why isn't there, you know, I've looked at lots of insurance applications, especially if you're going through a refinance or whatever, and they ask you all sorts of questions about relating to property. Why wouldn't there be a section in here that would ask the very kinds of pointed questions that you are saying are now answered or elicited based on a handwritten statement of the agent? Two points, Your Honor. Number one, it's because there is such an amazing variety of information out there that you need to gather from uninsured, some of which is asked for specifically, such as income, beneficiaries and so on, and some of which is obtained through the colloquy between the agent and the policyholder that's in the box titled additional information. I think it's important that the trial court pointed out in granting summary judgment here that there is no authority that plaintiffs were able to point to or that the trial court was aware of that says that an insurance company is required to ask a specific question. They are entitled to act upon information that is provided, in this case ownership of property, need to replace mortgages. But the law of materiality also says that the questions that are elicited by the form are irrelevant in making that determination, and I'm finding it very difficult in this policy to find any support for the notion that a life insurance policy on this woman's life turned on whether or not it was being used to pay off a mortgage, other than that handwritten statement, which by definition, when it comes to pass, the person who made the statement won't be around to explain it. So all we have now is a handwritten notation taken by the agent and an after-the-fact rationalization submitted by the underwriter. That's true. Where there has been no underwriting, no investigation of the accuracy of the representation. I find it very, very difficult to say that the policyholder would have understood the significance and importance of this statement. Well, under the facts of this case, Your Honor, I don't think there's any reason to be suspicious. As I said, there is evidence in the record, first of all, that is conceded by the plaintiff's language expert, Mr. Velu, who spoke excellent Hindi, so on its face there's no question to doubt the accuracy of the translation. We pointed out in the record that sometimes when you translate something directly, word for word, the words get out of order. Even taking the language as accurate. Well, understood. Let me go to the heart of that matter, though, Your Honor. I don't think the reference to the mortgages in the additional information box is somehow extraneous or a postscript that's separated from the form. The whole application is like a unified field. Her rental income of $64,000 was from these properties she owned. Her net worth of $830,000 was from these properties she owned. The whole reason for her buying insurance was, as stated in the application, she owned the property that the primary beneficiary will inherit upon her death. Well, where's the net worth information? I'm sorry, Your Honor? Where's the net worth information? The net worth information is in the application. It's in the, I believe, the first page. In our supplemental record, it's page 666, and it says $64,000 rental income and personal net worth $830,000. So what Mrs. Siwak was presenting to the insurance company was one unified point. I'm a property owner. I'm worth $830,000. And during the discovery, it was established by her family members that, in fact, yes, what she meant in representing these facts in the application was she owns these four properties. And, Your Honors, we've got them in the record. We've got the addresses. We have the exact mortgages. And, of course, one of our arguments that plaintiffs have never addressed at any point of the briefing is you add up all of the mortgages and they come to about $250,000. If you add some miscellaneous costs, it kicks it a little over $300,000, well below the $650,000. Suppose she did have an equitable or beneficial interest in the property. Would that suffice? It wouldn't, Your Honor, because as Judge Hamilton pointed out in the In re Yule case, a Callip case out of 2007, it's possible, yes, to have equitable ownership if a party rebuts the presumption that even though they don't have legal title, they're not the legal owner, still they have an equitable interest. But you have to do that under Yule by clear and convincing evidence. That means that she may have failed in her proof. But my question was the antecedent one. Suppose she had met that burden. Right. If she had met that burden, to quote Mr. Stola, it would have been an interesting question, but it wouldn't be pertinent for a couple of reasons. Number one, the argument wasn't raised below. As Judge Hamilton pointed out in her lengthy decision, plaintiffs never made the equitable ownership argument. But more importantly, number two, let's come to the grips with it, this is not a legally recognizable form of ownership. It's not like she has a real live equitable ownership as we understand it in the United States. Her understanding was she has some sort of vague communal family ownership in the property. There we're sliding over again to the burden of proof and failure proof. Exactly. And it's clear and convincing proof that's required in the context of equitable ownership. And I think a really interesting part of this issue, Your Honors, is that even if you accept somehow the idea that, as we know, she was saying she owned the property in the Fiji communal sense. That's conceded by her family. Even if you ignore the fact that you don't have the money to add up to the $650,000, which is an independent reason to reject her position, her family ownership notion makes no sense because what she's presenting to the insurance company, again, is she has to have a reason to get $650,000. You have to have an income to replace or an estate that's necessary to pay off mortgages. You don't just walk in and buy a million bucks of insurance. She's saying to the company, I own this, sort of in the family sense, and I want the money to come in so that when I die the mortgages will be paid off and my heirs will inherit it. My beneficiary will take the property. Well, guess what? They wouldn't take anything because at best all she had was communal family ownership. And what about the other 10 family members in Fiji who said, oh, wait a minute. Mrs. Siwak claimed that she owned these properties in some sense and could convey them to her heirs. She can't. They all would have a right under that cultural phenomenon to make that point. I see I'm coming up on the end of the lines, Your Honor. So if there are further questions, I'd be happy to answer them. Thank you. Thank you. All right. Case argued as submitted.
judges: Ripple, Rymer, Fisher